**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JANELLE GEDMIN, <br>                      Plaintiff, <br>     v. <br> NORTH AMERICAN SAFETY PRODUCTS, INC., <br>                      Defendant. | Case No. 08 C 337 <br><br> Judge St. Eve <br><br> Magistrate Judge Mason |

**Plaintiff's Memorandum of Law in Support of**
**An Award of Back Pay and Front Pay Damages**

Plaintiff, Janelle Gedmin, by and through her attorneys, Karen J. Doran and Deanne S. Medina, submits this brief in support of an award of back pay and front pay damages as follows:

**I.**    **Introduction**

On March 3, 2010 a jury found Defendant liable for sexual harassment and constructive discharge in violation of Title VII of the Civil Rights Act of 1964, as amended. The jury awarded Ms. Gedmin $50,000 in compensatory and punitive damages. On June 28, 2010 this Court denied Defendant's Motion for a New Trial and set a briefing schedule for damages prove up.

**II.**    **Ms. Gedmin is Entitled to a Back Pay Award of $428,436.41.**

    *1.*    *Lost Income*

Ms. Gedmin worked for Defendant for seven and a half years, from September 14, 1998 through February 27, 2006. When she was constructively discharged she was earning $2,650.00 every two weeks (this amounts to $68,900 per year) and $12,000 per year in sales commissions for a total annual income of $80,900. Each and every year she worked for Defendant, around her anniversary date, she received merit increases. For the three years prior to her discharge, she received an average increase of $7,800 per year (on November 26, 2003 she received a raise from $1,750

every two weeks to $2,150 every two weeks – or $10,400 per year; on November 24, 2004 she received a raise to $2,350 every two weeks – or $5,200 per year; on October 22, 2005 she received a raise to $2,650 every two weeks – or $7,800 every year). (Exhibit A.)

After she was discharged from NASP, Ms. Gedmin actively sought comparable re-employment, applying for dozens of jobs. (Exhibit A2) In 2006 she secured a position with Unlimited Performance Training in Northbrook, Illinois as a bookkeeper making approximately $10.00/hour. She left after only a month because one day it took her three hours to drive to work due to an accident and construction. When she arrived at the office her boss yelled profanities at her, despite the fact that Janelle had kept in contact with her while she was driving in, apprising her of the traffic situation. Janelle also had explained when she was hired that she would be driving everyday from Frankfort. She earned $1,056.74 working for that company. (Exhibit B)

While continuing to look for a comparable job, in August, 2006 Ms. Gedmin decided to try to make herself more marketable by earning her Microsoft Certification. To do so, she enrolled in a course and borrowed $33,182.85 for tuition and examination fees. (Exhibit C)

In March, 2007 she began work for Chicago Bath Systems, LLC d/b/a Bath Fitter as a part-time receptionist at $12.00 an hour. Later she was promoted to an Event Coordinator making $15.38 an hour. She was let go in July, 2007 because her boss did not think "her heart was in it." She earned $8,439.46. (Exhibit D)

Since many of the job postings paying a wage comparable to NASP required a college education, in May, 2007 Ms. Gedmin enrolled at Joliet Junior College to begin earning a degree. She incurred $975.60 in costs for tuition and books. (Exhibit E)

From August, 2007 through November, 2007 Ms. Gedmin worked as an administrative assistant for Big Shoulders Digital Video PR making $17.00 an hour. She resigned because she found that her work hours – noon until 8 p.m. – made it too difficult for her to parent her teenaged son.[1] In addition, she decided that she could no longer work for that company because they were moving offices from the Chicago loop to the John Hancock building which would greatly increase her commute. She and earned $6,241.13 at that job. (Exhibit F)

In February, 2009 she was hired by the Allstate Insurance Co. as an administrative assistant making approximately $16.00 an hour. Unfortunately Ms. Gedmin contracted bronchitis that turned into pneumonia in the fall of 2009 and had to be hospitalized twice and take more sick time off from work than was allotted her. As such, she was terminated from her job in January, 2009 after earning $30,098.67. (Exhibit G)

In 2009 Ms. Gedmin decided to seek employment as a medical assistant, so she enrolled at Keiser University. After spending $7,263 for tuition, $89.02 for books, and $203 for certifications (for a total of $7,555.02), she earned her Associate's Degree of Science in Medical Assisting. (Exhibit H) Two weeks prior to matriculating, she was hired as a medical assistant by Primary Health Associates and has been working there since July 12, 2010 earning $14.00/hour and working 30 to 35 hours a week. To date, she has earned approximately $2,275.

Ms. Gedmin's decision to continue her education as part of her job search efforts was both reasonable and fruitful. Despite her efforts to find comparable work, though, she was not able to, so she decided to work towards earning a certificate and later a degree to enhance her employability. *See e.g. Hanna v.* Am. Motors Corp., 724 F.2d 1300, 1306-10 (7th Cir. 1984); *Daily v. Societe*, 108

---

[1] Her hours at NASP were approximately 9 a.m. to 5 p.m.

F.3d 451, 455-58 (2d Cir. 1997). The fact that she was able to secure a job even before she had graduated shows the reasonableness of her decision.

Defendant owes Ms. Gedmin $385,964.00 in lost wages ($434,075 for the income she would have earned had she not been discharged, less the $48,111 she has earned since her termination). It also should reimburse her $41,713.47 for education expenses incurred as a result of seeking re-employment.

| BACK PAY DAMAGES: LOST INCOME | |
|---|---:|
| **NASP Salary** | |
| 2/28/06 - 9/16/06 (28 weeks X $1,325.00/week) | $37,100.00 |
| 9/17/06 - 9/16/07 (52 weeks X $1,475.00/week) | $76,700.00 |
| 9/17/07 - 9/16/08 (52 weeks X $1,625.00/week) | $84,500.00 |
| 9/17/08 - 9/16/09 (52 weeks X $1,775.00/week) | $92,300.00 |
| 9/17/09 - 8/13/10 (47 weeks X $1,925.00/week) | $90,475.00 |
| **NASP Commission** | |
| 2/28/06-8/13/10 (53 months X $1,000/month) | $53,000.00 |
| SUBTOTAL | $434,075.00 |
| | |
| **Unlimited Performance Training** | $1,056.74 |
| **Chicago Bath Systems, LLC** | $8,439.46 |
| **Big Shoulders Digital Video PR** | $6,241.13 |
| **Allstate Insurance Co.** | $30,098.67 |

| | |
|---|---:|
| **Primary Health Assoc.** | $2,275.00 |
| SUBTOTAL | ($48,111.00) |
| | |
| **Microsoft Certification** | $33,182.85 |
| **Joliet Junior College** | $975.60 |
| **Keiser University** | $7,555.02 |
| SUBTOTAL | $41,713.47 |
| | |
| **TOTAL LOST INCOME** | **$427,677.47** |

*2. Lost Benefits*

Defendant provided Ms. Gedmin with outstanding medical, dental, and prescription drug benefits. NASP paid 100% of her insurance premiums for herself and her son, Dylan. Since her discharge, Ms. Gedmin has suffered through periods where she was not covered by any insurance. At times her subsequent employers provided her with insurance benefits, however she was required to pay for a portion of the premiums. While working for Chicago Bath Systems, LLC, she paid $14.02 towards her insurance premium. At Allstate, she paid $3,221.53. Although she was able to secure Medicaid for Dylan, since June, 2009 she has had to pay the state $225 for that benefit.

In addition to paying towards insurance premiums, Ms. Gedmin has incurred substantial out-of-pocket expenses related to healthcare for her and her son which she would not have incurred as an NASP employee. She has paid $2,286.72 in medical expenses (Exhibit I), $413.90 in dental expenses (Exhibit J), and $1,387.77 in prescription drug expenses (Exhibit K).

Defendant, as such, should reimburse Ms. Gedmin $7,548.94 in medical, dental, and prescription drug costs.

| BACK PAY DAMAGES: LOST BENEFITS | |
|---|---|
| **Insurance Premium Payments** | |
| Chicago Bath Systems, LLC | $14.02 |
| Allstate Insurance Co. | $3,221.53 |
| Medicaid | $225.00 |
| SUBTOTAL | $3,460.55 |
| **Out-of-pocket Healthcare Costs** | |
| Medical | $2,286.72 |
| Dental | $413.90 |
| Prescriptions | $1,387.77 |
| SUBTOTAL | $4,088.39 |
| | |
| **TOTAL LOST BENEFITS** | **$7,548.94** |

**III.  This Court Should Award Ms. Gedmin Equitable Relief in the Form of Front Pay Damages in Lieu of Reinstatement.**

Ms. Gedmin was Martin Mobeck's right hand employee – in his own words, she was his "partner." She was there at NASP's infancy; she was its first employee in September, 1998. Apart from the sexual harassment, she loved her job. She felt a sense of pride and accomplishment working for NASP. She held a position of power and authority as Administration Operations Manager and had great responsibility. (Exhibit L) She was also compensated well for her efforts and was the only non-family member or owner to own stock in the company. She had her own office and managed employees. Just before her discharge, she purchased a home nearby, further demonstrating her commitment to her job. She even brought her son to the office where she kept a basketball and hoop for him in the warehouse. She brought in a microwave oven, plants, and gardening supplies to make

the office more comfortable. (Exhibit M) But for the sexual harassment and constructive discharge, Ms. Gedmin would have remained working for NASP for years to come.

Ms. Gedmin has made reasonable efforts to find comparable work. She accepted jobs far from home and for much less money and benefits. She went back to school three times in the last four and a half years and is now a skilled medical assistant. But in mitigating her damages, she has spent a large amount of money to re-train and educate herself in order to compete in today's job market. She's also had to settle for jobs paying a fraction of her NASP salary and she has no prospect of earning a comparable wage in the foreseeable future. Ms. Gedmin is a single mother whose lifestyle has declined drastically since this case began, as evidenced by her filing for bankruptcy. She deserves equitable relief in the form of front pay damages based on her most recent NASP earnings, taking into consideration her history of yearly sizeable merit increases, and benefits, for a period of time that this court deems just.

### IV. Conclusion

Plaintiff requests that this Honorable Court **GRANT** her back pay damages in the amount of $428,436.41, front pay in lieu of reinstatement, and award Plaintiff any and all further relief it deems just and equitable.

        Respectfully submitted,

        /s/Karen J. Doran
        Attorney for Plaintiff

Karen J. Doran
Atty. No. 062821773
20 Danada Square West, Ste. 149
Wheaton, IL 60189
Telephone: 630/368-0200
Fax: 630/368-0202
E-mail: karen@doran.com

**Proof of Service**: Karen J. Doran, an attorney, certifies that service of Plaintiff's Memorandum of Law in Support of An Award of Back Pay and Front Pay Damages to Thomas Polacek, McNamara Phelan McSteen, LLC, 116 North Chicago St., Suite 204, Joliet, Illinois 60432 was accomplished by ECF on Friday, August 13, 2010.

Karen J. Doran
Atty. No. 062821773
20 Danada Square West, Ste. 149
Wheaton, IL 60189
Telephone: 630/368-0200
Fax: 630/368-0202
E-mail: karen@doran.com