# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JANELLE GEDMIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 08 C 0337 |
| v. | ) |
| | ) |
| NORTH AMERICAN SAFETY PRODUCTS, INC., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On March 3, 2010, a jury returned a verdict in favor of Plaintiff Janelle Gedmin on her hostile work environment claim in violation Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.,* against Defendant North American Safety Products, Inc. ("North American"). Before the Court is Gedmin's Motion for Back Pay and Front Pay Damages. For the following reasons, the Court, in its discretion, grants Gedmin's motion for back pay in the amount of $290,742.14, but denies Gedmin's motion for front pay damages. *See David v. Caterpillar, Inc.,* 324 F.3d 851, 865-66 (7th Cir. 2003) ("the district court has broad equitable discretion to fashion back pay awards to make the Title VII victim whole").

## BACKGROUND

Gedmin brought this lawsuit alleging that North American subjected her to a hostile work environment and retaliated against her by reducing her pay and informing her that the company was looking for a replacement for her position after she informed North American of the sexual harassment. Gedmin sought compensatory and punitive damages for her injuries. The Court commenced Gedmin's jury trial on March 1, 2010. On March 3, 2010, the jury returned a

verdict in favor of Gedmin on her hostile work environment claim and concluded that Gedmin was constructively discharged.[1] The jury awarded Gedmin $35,000 in compensatory damages and $15,000 in punitive damages. On the other hand, the jury returned a verdict in favor of North American on Gedmin's retaliation claim. The Court entered judgment on March 3, 2010 and, on June 28, 2010, the Court denied North American's motion for a new trial.

## LEGAL STANDARDS

Prior to the Civil Rights Act of 1991, a prevailing party in a Title VII action could only recover equitable relief, not compensatory damages. *See Randolph v. IMBS, Inc*., 368 F.3d 726, 732 (7th Cir. 2004) ("Until the Civil Rights Act of 1991, only equitable remedies (including back pay) were available for violations of the 1964 Act"). "With the passage of the Civil Rights Act of 1991, a plaintiff also may recover compensatory damages," *see Hildebrandt v. Illinois Dept. of Natural Resources,* 347 F.3d 1014, 1031 (7th Cir. 2003), which are subject to limitations or "caps" based on the size of the employer. *See National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 119, 122 S.Ct. 2061, 152 L.Ed.2d 106 (2002). Back pay and front pay are not considered "compensatory damages" under Section 1981a, and thus are not subject to any statutory caps or limitations. *See* 42 U.S.C. §§ 1981a(b)(2), 2000e-5(g); *see also Pollard v. E.I. du Pont de Nemours & Co.,* 532 U.S. 843, 848, 121 S.Ct. 1946, 150 L.Ed.2d 62 (2001); *Pals v. Schepel Buick & GMC Truck, Inc.,* 220 F.3d 495, 499 (7th Cir. 2000). Title VII, however, requires mitigation of damages with respect to back pay. *See Doe v. Oberweis Dairy,* 456 F.3d

---

[1] North American's arguments made in opposition to the present motion based on Gedmin voluntarily resigning from her employment are without merit because the jury found that Gedmin had proved by a preponderance of the evidence that she was constructively discharged because she was subjected to a hostile work environment.

704, 714 (7th Cir. 2006). Also, courts may award front pay in lieu of reinstatement. *See Shick v. IDHS,* 307 F.3d 605, 614 (7th Cir. 2002) ("Front pay is an appropriate remedy in Title VII cases when reinstatement is not available or not advisable because of workplace incompatibility.")

## ANALYSIS

In her opening legal memorandum, Gedmin asserts that she is entitled to $428,436.41 in net lost income and benefits, but in her reply brief, Gedmin seeks an award of $368,130.60 after reducing certain amounts in her calculations. North American, on the other hand, maintains that Gedmin should be awarded a total of $189,465.73 in lost income and $4,102.41 in lost benefits.

**I.     Back Pay**

The parties agree that North American owes Gedmin $37,100.00 for the work period of February 28 through September 16, 2006 and $76,700.00 from the time period of September 17, 2006 through September 16, 2007. Also, the parties agree that North American owes Gedmin $22,750.00 from September 17, 2007 through December 31, 2007 for lost income. The parties further agree that Gedmin's lost benefit award throughout the relevant time period is $4,102.41.

For the period of January 1, 2008 through May 1, 2010, however, Gedmin contends that her lost income was $176,962.50. North American argues that this calculation is wrong based on North American CEO Martin J. Mobeck's Affidavit in which he avers that as of January 1, 2008, North American reduced the wages of its employees by ten percent and reduced their hours from 40 hours per week to 32 hours per week. (R. 95, Ex. A, Mobeck Aff. ¶¶ 3, 4.) It is undisputed, however, that at the time of her constructive discharge Gedmin was a salaried, not hourly, employee. Thus, the Court only considers the ten percent decrease of her salary in concluding that Gedmin's lost income for the time period of January 1, 2008 until March 3, 2010 – the date

3

the Court entered judgment in this matter – is $165,262.50. *See, e.g., Emmel v. Coca-Cola Bottling Co. of Chicago, Inc.,* 904 F.Supp. 723, 729 (N.D. Ill. 1995) (back pay award extends until day of judgment); *see also Pollard,* 532 U.S. at 846, 849 (front pay awarded after judgment entered). Finally, the parties agree that Gedmin's relevant commissions until the date the Court entered judgment on March 3, 2010 total $30,663.23.

**II.     Front Pay**

The parties dispute whether Gedmin is entitled to front pay, which is "money awarded for lost compensation during the period between judgment and reinstatement or in lieu of reinstatement." *Pollard,* 532 U.S. at 846. "Front pay is an appropriate remedy in Title VII cases when reinstatement is not available or not advisable because of workplace incompatibility." *Shick,* 307 F.3d at 614; *see also Bruso v. United Airlines, Inc.,* 239 F.3d 848, 862 (7th Cir. 2001) ("When reinstating a successful Title VII plaintiff is not feasible, front pay is usually available as an alternative remedy."). When front pay is a substitute for reinstatement, it should compensate the employee for the reasonable time it would take to find comparable employment. *See Shick,* 307 F.3d at 614. Moreover, in order to award front pay damages, the plaintiff is "required to present persuasive evidence of inability to find a substitute job." *Mattenson v. Baxter Healthcare Corp.,* 438 F.3d 763, 771 (7th Cir. 2006). As the Seventh Circuit instructs: "A plaintiff who seeks an award of front pay must provide the district court with the essential data necessary to calculate a reasonably certain front pay award," including "the amount of the proposed award, the length of time the plaintiff expects to work for the defendant, and the applicable discount rate." *Bruso,* 239 F.3d at 862 (internal quotations and citations omitted). "If

4

the plaintiff fails to provide this information to the district court, the court will not abuse its discretion if it denies his request for front pay." *Id.*

Here, Gedmin admits that she has not set forth the applicable discount rate, but instead directs the Court's attention to a 1982 Seventh Circuit case as guidance. *See O'Shea v. Riverway Towing*, 677 F.2d 1194 (7th Cir. 1982). Although the *O'Shea* decision gives guidance in computing the present value of lost future wages, the United States Supreme Court has been hesitant to adopt any fixed formula accounting for inflation when discounting future wages to their present value. *See Jones & Laughlin Steel Corp. v. Pfeifer,* 462 U.S. 523, 546-547, 103 S.Ct. 2541, 76 L.Ed.2d 768 (1983). Based on Gedmin's failure to provide the discount rate necessary to establish the proper amount of her front pay damages, along with her failure to provide sufficient data as discussed below, the Court denies Gedmin's request for front pay damages. *See Bruso*, 239 F.3d at 863; *see, e.g., O'Sullivan v. City of Chicago,* No. 01 C 9856, 2007 WL 951941, at *10 (N.D. Ill. Mar. 26, 2007).

To clarify, Gedmin has failed to present evidence of when her front pay damages award should end, namely, the amount of reasonable time it would take for her to find comparable employment. *See Shick,* 307 F.3d at 614. At first, she calculates the award until the date she filed the present motion, but in her reply brief she calculates the end date as the day on which she filed her reply, September 24, 2010. The relevant inquiry, however, is not the date a plaintiff files a motion, but when a plaintiff "can reasonably be expected to have moved on to similar or superior employment." *Williams v. Pharmacia, Inc.,* 137 F.3d 944, 954 (7th Cir. 1998). Gedmin's argument – that had it not been for her constructive discharge, she would have

5

remained working for North American for many years to come – is not enough information for the Court to calculate Gedmin's front pay damages.

Because Gedmin has failed to set forth competent evidence and calculations for a reasonable award of front pay damages, the Court, in its discretion, denies her request for front pay. *See Bruso,* 239 F.3d at 862-63 (district court does not abuse discretion in denying front pay if plaintiff fails to provide necessary information); *McKnight v. General Motors Corp.,* 973 F.2d 1366, 1372 (7th Cir. 1992) (plaintiff seeking front pay must provide court with "the essential data necessary to calculate a reasonably certain front pay award.").

## III. Mitigation

"Title VII [requires] mitigation of damages with respect to back pay, because it provides that 'interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable.'" *Doe*, 456 F.3d at 714 (quoting 42 U.S.C. § 2000e-5(g)(1)). Under Seventh Circuit law, a plaintiff is only required to make an "honest good faith effort" in seeking other employment. *See N.L.R.B. v. Midwestern Personnel Serv. Inc.,* 508 F.3d 418, 423 (7th Cir. 2007); *EEOC v. Ilona of Hungary, Inc.,* 108 F.3d 1569, 1581-82 (7th Cir. 1997).

Throughout the relevant time period, Gedmin made an honest good faith effort in seeking employment, working various jobs, and taking courses and training to increase her chances of securing comparable work. As Gedmin demonstrates in her legal memoranda and attached exhibits, in 2006 she worked at Unlimited Performance Training in Northbrook, Illinois as a bookkeeper earning a total of $1,056.74. Gedmin left that job because of her long commute and her supervisor's disdain for her. In March 2007, Gedmin worked for Chicago Bath Systems

6

making a total of $8,439.46 before she was let go. Thereafter, Gedmin worked for Big Shoulders Digital Video earning $6,241.13. She left her employment with Big Shoulders after it moved its offices to downtown Chicago. Gedmin also worked for Allstate Insurance earning $30,098.67 before she was terminated from her job. Also during this time period, Gedmin took college courses, earned a Microsoft certification, and earned an associate's degree of science in medical assisting. In fact, Gedmin is now employed by Primary Health Associates as a medical assistant. Based on this information, Gedmin conducted a reasonable search for work and procured jobs to mitigate her back pay damages.

On the other hand, without citing to controlling authority, North American argues that Gedmin failed to properly mitigate her back pay damages because she resigned from two of the jobs that she held during this time period and that the back pay calculation should include earnings that she "would have received" had she not resigned. North American's unsubstantiated arguments do little to establish its burden of demonstrating that Gedmin was not making an adequate effort to mitigate her damages, especially in light of Gedmin's extensive efforts described above. *See Midwestern Personnel,* 508 F.3d at 423; *see also Smith v. Great Am. Rest., Inc.,* 969 F.2d 430, 438 (7th Cir. 1992) (defendant has burden of showing plaintiff failed to exercise reasonable diligence in attempting to mitigate damages). Without more, North American's arguments fail.

**IV.     Education Reimbursement**

Last, Gedmin seeks tuition reimbursement for attending Joliet Junior College and Keiser University, along with the costs of obtaining her Microsoft certification. Gedmin, however, does not argue that these educational expenses are part of her lost benefits and there is no indication

from the record that North American would have paid these educational expenses had Gedmin remained employed there. In addition, Gedmin's reliance on a 1984 case discussing mitigation requirements under the Vietnam Era Veteran's Readjustment Assistance Act of 1974, 38 U.S.C. § 2022, is not persuasive because the court in that case did not award educational expenses as Gedmin suggests. *See Hanna v. American Motors Corp.,* 724 F.2d 1300, 1306-10 (7th Cir. 1984). Instead, the *Hanna* court considered plaintiff's college attendance as a factor in its mitigation analysis. *See id.* at 1308-10. The Court thereby declines to award Gedmin her educational expenses.

**V.     Back Pay Award**

The Court, in its discretion, awards Gedmin $290,742.14 in back pay damages as follows:

| BACK PAY | |
| --- | --- |
| February 28, 2006 through September 16, 2006 | $37,100.00 |
| September 17, 2006 through September 16, 2007 | $76,700.00 |
| September 17, 2006 through December 31, 2007 | $22,750.00 |
| January 1, 2008 through March 3, 2010 | $165,262.50 |
| Lost benefits | $4,102.41 |
| Commissions | $30,663.23 |
| Total Back Pay Damages | $336,578.14 |
| **MITIGATION** | |
| Unlimited Performance Training | ($1,056.74) |
| Chicago Bath Systems | ($8,439.46) |
| Big Shoulders Video | ($6,241.13) |
| Allstate Insurance | ($30,098.67) |

8

| Total Mitigation Deduction | ($45,836.00) |
|---|---|
| **TOTAL DAMAGES AWARD** | **$290,742.14** |

## CONCLUSION

For these reasons, the Court grants Plaintiff's motion for back pay damages, but denies Plaintiff's motion for front pay damages.

Dated: November 3, 2010

                         **ENTERED**

                         */s/ Amy J. St. Eve*
                         **AMY J. ST. EVE**
                         **United States District Judge**